Jesse Wayne HARRISON,
petitioner, Appellant,

v.

**COMMISSIONER OF PUBLIC
SAFETY, Respondent.**

No. A09–1419.

Court of Appeals of Minnesota.

May 4, 2010.

Richard L. Swanson, Chaska, MN, for appellant.

Lori Swanson, Attorney General, Melissa Eberhart, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by STAUBER, Presiding Judge; STONEBURNER, Judge; and ROSS, Judge.

## OPINION

STONEBURNER, Judge.

In this consolidated appeal, appellant challenges decisions of the district court sustaining two separate revocations of his driver's license. Appellant argues that after his lawfully-obtained blood sample was preserved, the warrantless testing of the sample for its alcohol concentration violated his federal and state constitutional rights to be free from unreasonable searches. Appellant asserts that the district court in each case erred by failing to suppress evidence of his alcohol concentration as the fruit of an illegal search, and erred by sustaining the license revocations that were based on the illegally obtained evidence.

## FACTS

In early 2009, appellant Jesse Wayne Harrison was arrested for driving while impaired (DWI) on two separate occasions and was asked to consent to testing under the implied-consent law. On each occasion, Harrison consented to a blood test to determine his alcohol concentration. Harrison was, on each occasion, transported to a hospital where a blood sample was drawn. Harrison was cooperative during both incidents, and he concedes that the blood samples were lawfully seized.

The samples were analyzed to determine Harrison's alcohol concentration. The results of each test indicated an alcohol concentration over the legal limit. The Minnesota Commissioner of Public Safety revoked Harrison's driver's license under the implied-consent law in each case. Harrison challenged the license revocations, arguing that the alcohol-concentration evidence in each case was inadmissible because testing the preserved blood samples for their alcohol concentration without a warrant constituted an unreasonable search, in violation of his constitutional rights. In each case, the district court sustained the license revocation, concluding that because Harrison's blood was lawfully seized, a warrant was not required for the subsequent testing. This appeal follows.

## ISSUE

Does the warrantless testing for alcohol concentration in a blood sample, which was lawfully obtained from a person under the implied-consent law, constitute an illegal search under the United States or Minnesota Constitutions?

## ANALYSIS

### I. Our standard of review is de novo.

A proceeding to challenge the revocation of a driver's license under the

implied-consent statute is civil in nature, not criminal. *State v. Dumas,* 587 N.W.2d 299, 303 (Minn.App.1998), *review denied* (Minn. Feb. 24, 1999). Harrison's challenge to the license revocations is based only on his assertion of violation of his rights to be free of unreasonable searches under the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution. Because Harrison raises only a question of law, our review is de novo. *See Shane v. Comm'r of Pub. Safety,* 587 N.W.2d 639, 641 (Minn.1998) (stating that, where the facts of a case are undisputed, questions of law are reviewed de novo).

## II. The exclusionary rule applies to implied-consent proceedings.

The Fourth Amendment to the United States Constitution provides, in relevant part, that the right of the people to be secure in their persons against unreasonable searches and seizures shall not be violated, and no warrants shall issue without probable cause. Article I, Section 10, of the Minnesota Constitution contains a parallel provision. Generally, evidence seized in violation of the constitution is inadmissible for criminal prosecution in a court of law. *State v. Jackson,* 742 N.W.2d 163, 177–78 (Minn.2007) (citing *Weeks v. United States,* 232 U.S. 383, 398, 34 S.Ct. 341, 346, 58 L.Ed. 652 (1914) and *Mapp v. Ohio,* 367 U.S. 643, 648, 81 S.Ct. 1684, 1686–87, 6 L.Ed.2d 1081 (1961)). The exclusionary rule has been applied to implied-consent license-revocation proceedings. *See, e.g., Haase v. Comm'r of Pub. Safety,* 679 N.W.2d 743, 748 (Minn. App.2004) (concluding that an officer's warrantless entry into Haase's garage was an unreasonable search and that district court erred by declining to suppress evidence seized pursuant to the warrantless

entry, and reversing the district court's order sustaining revocation of Haase's driver's license).

"It is a basic principle of constitutional law that warrantless searches are presumptively unreasonable." *State v. Shriner,* 751 N.W.2d 538, 541 (Minn.2008) (citing *State v. Licari,* 659 N.W.2d 243, 250 (Minn.2003)). Because reasonableness is the touchstone of the Fourth Amendment, there are several exceptions to this rule. *Id.* (citing *Brigham City v. Stuart,* 547 U.S. 398, 403, 126 S.Ct. 1943, 1947, 164 L.Ed.2d 650 (2006)). Among the recognized exceptions to the warrant requirement is a search conducted because of exigent circumstances. *State v. Hatton,* 389 N.W.2d 229, 232 (Minn.App.1986) (citing *Katz v. United States,* 389 U.S. 347, 357–58, 88 S.Ct. 507, 514–15, 19 L.Ed.2d 576 (1967)), *review denied* (Minn. Aug. 13, 1986).

Both the United States Supreme Court and the Minnesota Supreme Court have recognized the validity of the application of the exigent-circumstances exception to alcohol testing for impaired driving. *See Schmerber v. California,* 384 U.S. 757, 770, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908 (1966) ("[T]he delay necessary to obtain a warrant ... threaten[s] the destruction of evidence."), *Shriner,* 751 N.W.2d at 549–50 ("[The] rapid, natural dissipation of alcohol in the blood creates single-factor exigent circumstances that will justify the police taking a warrantless, nonconsensual blood draw from a defendant, provided that the police have probable cause to believe that defendant committed criminal vehicular homicide or operation."). In *State v. Netland,* the Minnesota Supreme Court specifically held that "under the exigency exception, no warrant is necessary to secure a blood-alcohol test where there is probable cause to suspect a crime in which chemical impairment is an element of the offense." 762 N.W.2d 202, 214 (Minn.

2009). Harrison concedes the constitutionality of the warrantless seizure of his blood for alcohol-concentration testing in this case because the exigency exception applied. *See id.* at 213–14.

### III. Testing for alcohol concentration in a blood sample, lawfully obtained under the implied-consent law, does not constitute a search that implicates constitutional rights.

■ Despite language in the relevant caselaw that the exigent-circumstances exception applies to secure a blood-alcohol test incident to DWI arrest, Harrison argues that this caselaw only applies to the *collection* of a blood sample. Even if we were to concede that existing case law permits a separate analysis for collection and testing, which we do not, we would conclude that Harrison's argument is without merit.

Harrison's theory is that any exigency that made the warrantless draw of his blood reasonable ceased to exist when the sample was taken and preserved and, therefore, the later testing of the blood sample for its alcohol concentration requires a warrant or an exception (other than exigency) to the warrant requirement. Harrison cites no authority for his assertion that testing a blood sample for its alcohol concentration is an unreasonable search separate from lawful collection of the blood sample.

■■ A search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. *United States v. Jacobsen,* 466 U.S. 109, 122, 104 S.Ct. 1652, 1661, 80 L.Ed.2d 85 (1984) (holding, in part, that a chemical test that merely disclosed whether or not a particular substance was cocaine did not infringe upon any legitimate interest in privacy). Similarly, the protections of the Minnesota Constitution against unreasonable searches and seizures are not triggered unless a person has a legitimate expectation of privacy, defined as "those expectations of privacy that society is prepared to recognize as reasonable." *State v. Gail,* 713 N.W.2d 851, 860 (Minn.2006) (quoting *Katz,* 389 U.S. at 361, 88 S.Ct. at 516 (1967) (Harlan, J., concurring)) (quotation marks omitted).

We conclude that when the state has lawfully obtained a sample of a person's blood under the implied-consent law, specifically for the purpose of determining alcohol concentration, the person has lost any legitimate expectation of privacy in the alcohol concentration derived from analysis of the sample. *See United States v. Kincade,* 379 F.3d 813, 837 (9th Cir.2004) (holding, in connection with statutory DNA testing of individuals convicted of certain crimes, that after a defendant's identity has become a matter of state interest due to conviction of certain crimes, the defendant has lost any legitimate expectation of privacy in the identifying information derived from blood sampling). Absent such a privacy interest, any testing of the blood sample for its alcohol concentration is not a search that implicates constitutional protection, and Harrison's assertion that his constitutional rights were violated by the warrantless testing of his blood sample is without merit.

### DECISION

Because Harrison has no legitimate expectation of privacy in the alcohol concentration derived from analysis of his lawfully-obtained blood sample, the testing of his blood for its alcohol concentration did not violate Harrison's constitutional rights against unreasonable searches.

**Affirmed.**