*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1411**

Loren Elton Schwarzwalter, petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant.

**Filed July 28, 2014
Reversed
Willis, Judge***

Stearns County District Court
File No. 73-CV-10-11704

Sharon R. Osborn, Minneapolis, Minnesota (for respondent)

Lori Swanson, Attorney General, James E. Haase, Assistant Attorney General, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Connolly, Judge; and Willis, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**WILLIS**, Judge

In this appeal from rescission of a driver's-license revocation, appellant commissioner argues that the district court erred by concluding that respondent did not voluntarily consent to a warrantless breath test. We reverse.

## FACTS

On December 10, 2010, St. Cloud police officer Ryan Priebe stopped a truck driven by respondent Loren Elton Schwarzwalter for two minor traffic violations. Priebe arrested Schwarzwalter for driving while impaired (DWI) after he failed a field sobriety test and a preliminary breath test. Priebe read the Minnesota Implied Consent Advisory to Schwarzwalter while he was in the squad car, and he agreed to take a breath test, which showed an alcohol concentration of 0.10. Both Priebe and the Intoxilyzer operator noted that Schwarzwalter was "cooperative."

Schwarzwalter petitioned for judicial review of the license revocation, asserting several grounds for rescission, including a challenge to the Intoxilyzer results, an alleged violation of his Fourth Amendment rights, and a claim that the implied-consent advisory was coercive. Before the revocation hearing could be held, the United States Supreme Court issued its decision in *Missouri v. McNeely*, in which it held that the natural dissipation of alcohol is not a per se exigent circumstance that, standing alone, creates an exception to the Fourth Amendment search-warrant requirement. 133 S. Ct. 1552, 1556 (2013). Relying on *McNeely*, the district court suppressed the Intoxilyzer results as the fruit of an unreasonable, warrantless search, and rescinded the revocation of

Schwarzwalter's driving privileges. The commissioner appealed from this decision, alleging that Schwarzwalter consented to the test, an exception to the warrant requirement.

## D E C I S I O N

When the facts are not disputed, we review a constitutional challenge to a driver's-license-revocation determination de novo, as a question of law. *Harrison v. Comm'r of Pub. Safety*, 781 N.W.2d 918, 920 (Minn. App. 2010). We will reverse the district court only if it erroneously interpreted the law. *Ellingson v. Comm'r of Pub. Safety*, 800 N.W.2d 805, 806 (Minn. App. 2011), *review denied* (Minn. Aug. 24, 2011).

The district court concluded that (1) a breath test is a search within the meaning of the Fourth Amendment; (2) the evanescent nature of alcohol does not provide a per se exigent-circumstances exception to the warrant requirement; (3) consent implied by law is insufficiently voluntary; and (4) Minnesota law does not recognize a good-faith exception to the warrant requirement. After the district court issued its order, the Minnesota Supreme Court released its opinion in *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014).

In *Brooks*, the supreme court ruled that DWI chemical testing is a search that requires a warrant unless an exception applies and that the rapid dissipation of alcohol is not an exigency that provides a basis for a warrantless search, absent other circumstances. 838 N.W.2d at 567. But the supreme court concluded that a search falls under the consent exception if the state can show by a preponderance of the evidence that the defendant "freely and voluntarily consented." *Id.* at 568. "Consent to search may be implied by action, rather than words" and "can be voluntary even if the circumstances of the

3

encounter are uncomfortable for the person being questioned." *Id.* at 568-69. A court must consider the totality of the circumstances when deciding whether a person voluntarily consented to a search. *Id.* at 568.

The supreme court began its totality-of-the-circumstances analysis by considering the implied-consent statutory scheme, which requires a peace officer to have probable cause to believe a person is driving while impaired; to read the implied-consent advisory to the person, including the information that he is required to take a test and that refusal is a crime; and to advise the person of his right to consult an attorney before deciding whether to submit to a test. *Id.* at 569. If the person refuses a test, no test may be administered. *Id.* Here, there is no question that Priebe complied with the statutory requirements; Schwarzwalter does not contest the stop, nor deny that Priebe properly read the implied-consent advisory and advised him that he could consult with an attorney.

Next, a court considers "'the nature of the encounter, the kind of person the defendant is, and what was said and how it was said.'" *Id.* (quoting *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994)). Although Schwarzwalter did not consult with an attorney, nothing in the record suggests that he was subjected to duress, coercive questioning, or threatening behavior, or that he was confused about his rights.

The supreme court rejected the argument that the duress of being under arrest could prevent voluntary consent when an individual "was neither confronted with repeated police questioning nor . . . asked to consent after having spent days in custody." *Id.* at 571. Schwarzwalter was stopped at 12:47 a.m., the implied-consent advisory was read at 1:09 a.m., and testing was completed at 1:35 a.m. Schwarzwalter's friend was permitted to

drive his car home. Schwarzwalter was not handcuffed or questioned at length, and he did not spend a protracted time in custody.

Schwarzwalter argues that his consent was coerced because the implied-consent advisory informed him that refusal to submit to chemical testing is a crime. But the supreme court stated that "a driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Id.* at 570. The supreme court reasoned that the implied-consent advisory makes clear that an individual has a choice of whether to submit to testing:

> While an individual does not necessarily need to know he or she has a right to refuse a search for the consent to be voluntary, the fact that someone submits to the search after being told that he or she can say no to the search supports a finding of voluntariness.

*Id.* at 572. The supreme court rejected the contention that "existence of a consequence for refusing to take a chemical test render[s] the driver's choice involuntary." *Id.* at 570.

Schwarzwalter distinguishes *Brooks* by asserting that he had never been arrested before and Brooks clearly was more knowledgeable and aggressive, based on his behavior and multiple arrests for DWI. But on this record, we observe no evidence of coercion and conclude that the commissioner sustained the burden of showing that Schwarzwalter voluntarily consented to submit to a breath test. Therefore, the district court erred when it rescinded Schwarzwalter's driver's-license revocation.

**Reversed.**

5