*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0683**

Marilyn Jean VanOverbeke, petitioner,
Respondent,

vs.

Commissioner of Public Safety
Appellant.

**Filed December 1, 2014
Reversed
Stauber, Judge**

Dakota County District Court
File No. 19AV-CV-13-3172

Charles A. Ramsay, Daniel J. Koewler, Ramsay Law Firm, P.L.L.C., Roseville, Minnesota (for respondent)

Lori Swanson, Attorney General, Kristi Nielsen, Assistant Attorney General, St. Paul, Minnesota (for appellant).

Considered and decided by Stauber, Presiding Judge; Chutich, Judge; and Reilly, Judge.

## U N P U B L I S H E D   O P I N I O N

**STAUBER**, Judge

On appeal from a district court's order rescinding the revocation of respondent's driver's license under the implied-consent statute, appellant-commissioner argues that the

district court erred by determining that respondent did not voluntarily consent to a breath test. We reverse.

## FACTS

In October 2013, Sergeant Brent Murray observed a vehicle traveling at a high rate of speed and straddling the lane divider. Sergeant Murray stopped the vehicle and identified the driver as respondent Marilyn Jean VanOverbeke. While speaking with respondent, Officer Murray detected a strong odor of an alcoholic beverage coming from inside the vehicle and noticed that respondent's speech was slurred. Respondent was given the standard field sobriety tests and submitted to a preliminary breath test that revealed an alcohol concentration of 0.127.

Respondent was arrested on suspicion of driving while intoxicated (DWI) and transferred to the Burnsville Police Department. At the police department, respondent was read the implied-consent advisory, which respondent stated that she understood. Respondent also declined to speak with an attorney and agreed to take a breath test, which revealed an alcohol concentration of 0.14. Respondent's driver's license was subsequently revoked based on the results of her breath test.

Respondent sought judicial review of the revocation of her driving privileges, arguing that the results of her breath test should be suppressed because the evidence was obtained in violation of her Fourth Amendment rights. At the implied-consent hearing, the parties stipulated to the admission of the police investigative reports to establish a factual background. Respondent also testified at the hearing and admitted to agreeing to

2

take a breath test. But respondent further testified that she agreed to take the test because she "had to," and claimed that she did not feel like she had any choice.

The district court found that appellant Commissioner of Public Safety (commissioner) "made an insufficient case to establish [that respondent] knowingly and voluntarily consented to the search and waived the requirement under the Fourth Amendment for law enforcement to obtain a warrant prior to the search." Thus, the district court granted respondent's motion to rescind the revocation of her driver's license. This appeal followed.

## D E C I S I O N

Despite the civil nature of the proceeding, we apply Fourth Amendment principles from criminal cases in license-revocation proceedings. *See Knapp v. Comm'r of Pub. Safety*, 610 N.W.2d 625, 628 (Minn. 2000); *Harrison v. Comm'r of Pub. Safety*, 781 N.W.2d 918, 920 (Minn. App. 2010). When the facts are not in dispute, we review independently whether the search fits within an exception to the Fourth Amendment. *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn. 1992). Voluntariness of consent to a search is a question of fact, which will not be overturned unless it is clearly erroneous. *State v. Diede*, 795 N.W.2d 836, 846-47 (Minn. 2011).

The United States and Minnesota Constitutions guarantee people the right to be free from unreasonable searches. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Collection and testing of a person's breath constitutes a search under the Fourth Amendment. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1412-13 (1989). A warrantless search is generally unreasonable unless it falls within a

3

recognized exception to the warrant requirement.  *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007).

Consent is an exception to the warrant requirement.  *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied* 134 S. Ct. 1799 (2014).  "For a search to fall under the consent exception, the [s]tate must show by a preponderance of the evidence that the defendant freely and voluntarily consented."  *Id.*  In determining whether consent is voluntary, the reviewing court considers "the totality of the circumstances, including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said."  *Id.* at 569 (quotation omitted).  In the implied-consent context, the nature of the encounter includes how the police came to suspect that the driver was under the influence of an intoxicant, how the request to submit to chemical testing was made, including whether the driver was read the implied-consent advisory, and whether the driver had the right to consult with an attorney.  *Id.*  "[A] driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test."  *Id.* at 570.

Relying on *Brooks*, the commissioner argues that "the totality of the circumstances as established in the record in this case demonstrates that Respondent voluntarily consented to chemical testing."  In finding otherwise, the district court reasoned that the state provided "limited and general evidence of the nature of the encounter between the officer and [respondent]," including "no evidence . . . regarding prior encounters between [respondent] and law enforcement."  The district court also reasoned that "[u]nlike the

4

defendant in *Brooks*, who spoke with legal counsel, [respondent] did not have legal advice prior to testing."

Respondent argues that the district court correctly distinguished her case from *Brooks*, because she did not consult an attorney prior to taking the breath test, and unlike the defendant in *Brooks*, this was her first arrest for DWI. Respondent also contends that the implied-consent advisory is coercive because it indicates that a driver is "required" to take the test. And respondent further argues that her testimony supports the district court's decision that she did not freely and voluntarily consent to a search.

The facts in this case indicate that respondent consented to the breath test in essentially the same manner as in *Brooks*. The Minnesota Supreme held that the defendant in *Brooks* voluntarily consented to testing after "examining all of the relevant circumstances," including that he did not challenge the probable cause that he had been driving under the influence, he was properly read the implied-consent advisory, he was not subject to repeated police questioning and did not spend days in custody before consenting, and he consulted with an attorney before he consented to testing. *Id.* at 569–71. No one circumstance was determinative. *See id.* at 571 (explaining that Brooks's consultation with an attorney merely "reinforce[d] the conclusion" that he consented to testing).

Here, respondent does not challenge the finding that the officer had probable cause to believe that she had been driving under the influence. She was also read the implied-consent advisory and indicated that she understood it. As the supreme court stated in *Brooks*, the implied-consent advisory does not coerce the subject into taking the test;

5

instead, when neutrally given, the advisory "ma[kes] clear to [the subject] that [s]he ha[s] a choice of whether to submit to testing." *Id.* at 572. Respondent was given the opportunity to speak with an attorney before deciding whether to take a breath test. That fact that respondent did not contact an attorney is not dispositive. *Id.* at 569 (stating that the totality of the circumstances includes whether the defendant "had the right to consult with an attorney"). And, the supreme court in *Brooks* held that the defendant's consent was voluntary even though he was under arrest and in custody. *Id.* at 565-66, 572. Although the circumstances here are distinguishable from those in *Brooks* in that respondent is female, she was arrested by three male officers, this appears to have been respondent's first arrest for DWI, and she felt coerced by the demeanor and comments by officers during her processing, we cannot determine that those distinctions clearly suggest that her will was overborne. *See id.* at 571 ("[N]othing in the record suggests that Brooks was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired."). Finally, the district court did not specifically find to be credible respondent's testimony that she felt coerced or that her will was overborne by the officers' behavior. Thus, we conclude that under the totality of the circumstances, respondent voluntarily consented to the breath test. In so concluding, we note that in carefully reviewing this important issue, courts must be mindful that consent must not be coerced, either directly or through a coercive environment.

Because respondent agreed to provide a sample of her breath for chemical analysis, a warrant was not required, and the collection of the sample did not violate the United States or Minnesota Constitutions. Accordingly, the district court erred by

6

rescinding the implied-consent revocation of respondent's driver's license. And because

the warrantless collection was permissible under the consent exception as applied in

*Brooks*, it is not necessary to address the commissioner's alternative arguments for

reversal.

**Reversed.**